## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-21496-CIV-LENARD/GOODMAN

**LEONCIO DEL ROSARIO, et al.,**

      Plaintiffs,

**v.**

**LABOR READY SOUTHEAST, INC.,**
**and MDT PERSONNEL, LLC,**

      Defendants.

_____/

## OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
## (D.E. 78, 80, 84)

**THIS CAUSE** is before the Court on Defendant MDT Personnel, LLC's ("MDT")

Motion for Summary Judgment, filed on January 5, 2015. (D.E. 78.) Plaintiffs filed their

Response on January 29, 2015, (D.E. 95), to which MDT filed a Reply on February 9,

2015, (D.E. 101). The Parties' Statements of Undisputed Facts are incorporated into their

respective pleadings.

Also before the Court is Defendant Labor Ready Southeast, Inc.'s ("Labor

Ready") Motion for Summary Judgment, filed on January 5, 2015. (D.E. 80.) Plaintiffs

filed their Response on January 29, 2015, (D.E. 96), to which Labor Ready filed a Reply

on February 9, 2015, (D.E. 98). The Parties' Statements of Undisputed Facts are

incorporated into their respective pleadings.

Also before the Court is Plaintiffs' Motion for Summary Judgment, filed on

January 9, 2015. (D.E. 84.) MDT and Labor Ready each filed a Response on January

29, 2015, (D.E. 97, 98), to which Plaintiffs filed Replies on February 10, 2015, (D.E. 105, 106).  Plaintiff filed a Statement of Undisputed Facts (D.E. 85); Defendants incorporated their statements of facts into their Responses.

Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.

## I.    Background[1]

MDT employed Plaintiffs to move and clean rental cars on behalf of Alamo Rent A Car at Miami International Airport ("Alamo MIA").  (Id. ¶ 5.)  Labor Ready acquired MDT's assets in February or March, 2013.  (Id. ¶ 6.)[2]  Plaintiffs are suing Defendants pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and Florida's Minimum Wage Act, Florida Statute § 448.110.  (MDT Mot. (D.E. 78) ¶ 1.)  They allege minimum wage and unpaid overtime violations, for which they seek actual and liquidated damages.  (Id. ¶¶ 2-4.)

Plaintiffs were hourly-paid employees of MDT and Labor Ready.  (Pls. Facts (D.E. 85) ¶ 12.)  Alexander Grullon was the branch manager and the person in charge of employee payroll for MDT and Labor Ready at the Alamo MIA location until April 2014.  (Id. ¶¶ 13, 16.)  In April 2014, Ami Pavon became the branch manager at Alamo

---

[1]    The facts contained in this section are taken from the Parties' statements of facts submitted with their Motions and are undisputed unless otherwise noted.

[2]    MDT states that Labor Ready acquired its assets on February 4, 2013.  (Id.) Plaintiffs contend that in Answers to Interrogatories, Labor Ready stated that the date of the assets purchase was March 16, 2013. (D.E. 95 at 6.)  The "Asset Purchase Agreement" is dated February 4, 2013.  (See D.E. 98-1 at 1.)

MIA.  (Labor Ready Resp. ¶ 14.)  She was also in charge of paying Plaintiffs' wages. (Pls. Facts ¶ 14.)

Frank Maresca was MDT and Labor Ready's regional manager at the Alamo MIA location.  (Id. ¶ 18.)  Mr. Maresca delegated to Mr. Grullon the responsibility of monitoring the hours employees worked.  (Id.)  Because MDT/Labor Ready did not have an overtime bill rate for Alamo, they were required to bill Alamo for "straight time" even when employees were working overtime.  (Id. ¶ 19.)  Because Defendants could lose money this way, Mr. Maresca spoke with Mr. Grullon about reducing and limiting employee overtime.  (Id.)  Mr. Maresca limited Mr. Grullon to offering twenty hours of overtime per week, and told him that the ultimate goal is zero overtime.  (Id. ¶ 20.)

Plaintiffs state that Mr. Grullon deleted hours from Plaintiffs' time records and that Plaintiffs were not paid for those deleted hours.  (Id. ¶¶ 21, 23.)  Labor Ready contends that the hours Mr. Grullon deleted were fraudulently-entered, non-worked hours.  (D.E. 98 ¶¶ 21, 23.)

Plaintiffs allege that each workday, Defendants required Plaintiffs to report to a remote employee parking facility at MIA and wait for a shuttle to transport them to Alamo MIA.  (D.E. 85 ¶ 24.)  The parking facility did not have a time clock, and Plaintiffs were not paid for the time spent waiting for the shuttle and travelling to the work site, which amounted to approximately 25 to 40 minutes of uncompensated time each day.  (Id.)  Defendants also required Plaintiffs to clock out before shuttling back to the employee parking lot at the end of each workday, which amounted to an additional 25 to 40 minutes of uncompensated work time.  (Id.)  Defendants state that Plaintiffs were

not required to park in the employee parking lot and that, regardless, time commuting to and from the employee lot is not compensable under the FLSA.  (See MDT Resp., D.E. 97 ¶ 24; Labor Ready Resp., D.E. 98 ¶ 24.)

It is undisputed that in March 2014, Mr. Maresca became aware that employees were not being paid "right away."  (Labor Ready's Resp., D.E. 98 ¶ 27; Pls. Facts ¶ 27.) Mr. Maresca reprimanded Mr. Grullon for this and instructed Mr. Grullon that "from now on we need to pay everybody on Mondays."  (Pls. Facts ¶ 27.)  However, the late payments continued and Mr. Grullon was ultimately terminated in part because he was not paying employees on a timely basis.  (Id.)

Labor Ready states that its policy and practice was to pay workers based on a Saturday to Friday work week and to pay workers within seven to eight days following the Friday of the preceding pay period.  (Labor Ready Mot. ¶ 6.)  Plaintiffs dispute that the payroll records support Labor Ready's assertion, but stop short of disputing that they were, in fact, paid within eight days of the end of the pay period.  (See Pl. Resp., D.E.  96 ¶ 6.)

MDT states that during the relevant time period, it had no corporate policy to hold two weeks of pay from its employees, (MDT Mot. ¶ 10), but Plaintiffs argue that Defendant did have such a policy and withheld wages in abeyance, (D.E. 95 ¶ 10).

On September 4, 2014, Plaintiffs filed the operative Second Amended Complaint (D.E. 33) alleging claims for: unpaid overtime against Labor Ready and MDT, respectively (Counts I and II); minimum wage violations for failure to promptly pay

wages against Labor Ready and MDT, respectively (Count III and IV); unpaid minimum wages against Labor Ready and MDT, respectively (Counts V and VI).

Additional facts will be developed where relevant to the Court's discussion.

## II.    Legal Standards

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).   A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.   Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   Celotex, 477 U.S. at 323.   Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"   Id. at 324; see also Fed. R. Civ. P. 56(c).   In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   That party must demonstrate that there is a "genuine issue for trial."   Id. at 587.   An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."   Id.

## III.   Discussion

In their cross-motions for summary judgment, the Parties argue their respective positions concerning: (1) Plaintiffs' unpaid overtime wage claims; (2) Plaintiffs' unpaid

minimum wage claims; and (3) whether Defendants failed to promptly pay Plaintiffs' wages.[3]  The Court will discuss each in turn.

### a.     Counts I and II: unpaid overtime

Counts I and II of the Complaint allege unpaid overtime wage claims under the FLSA and Florida's Minimum Wage Act against Labor Ready and MDT, respectively. (D.E. 33 ¶¶ 19-25, 26-32.)  Plaintiffs argue that Defendants have not met their burden of producing evidence to negate the reasonable inference that they performed overtime for which they were not paid.  (Pl. Mot., D.E. 84 at 2.)  Labor Ready appears to argue that there is evidence in the record that Plaintiffs were paid for hours they did not actually work, thereby offsetting any deficiency.  (D.E. 97 at 8-9.)  Both Defendants argue that Plaintiffs are not entitled to compensation for travel time commuting from the employee parking lot to Alamo MIA.  (Id. at 11-14; D.E. 98 10-14.)

The Eleventh Circuit has explained that to prevail on an FLSA claim, a plaintiff "must prove that they were suffered or permitted to work without compensation."  Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314 (11th Cir. 2007).  "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked

---

[3]     Defendants devote a substantial portion of their Motions to arguing that Plaintiffs' claims should be dismissed for failure to comply with this Court's Order of April 29, 2014, establishing the Court's procedure in actions brought under the FLSA, (D.E. 4).  Specifically, Plaintiffs' counsel filed a separate lawsuit against the same Defendants for similar FLSA violations, arguably in violation of the Court's Order prohibiting Plaintiffs' counsel from adding additional opt-in plaintiffs' after the scheduling order deadline for joinder of parties, or by filing separate or related cases.  See Cruz Machado v. Labor Ready Southeast, Inc., et al., 14-24234-CIV-LENARD (S.D. Fla. Nov. 11, 2014).  Assuming without deciding that Plaintiffs' Counsel violated the Court's April 29, 2014 Order, the Court declines to impose the severe sanction of dismissal against his clients, Plaintiffs herein.  The Court also declines to grant Defendants' alternative request of removing Plaintiffs' Counsel from this case.

overtime without compensation and (2) the [defendant] knew or should have known of the overtime work." Id. at 1314-15 (citing Reich v. Dep't of Conservation and Natural Res., 28 F.3d 1076, 1082 (11th Cir. 1994)).

"Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'" Id. at 1315 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." Id. (citing Anderson, 328 U.S. at 687). The Supreme Court in Anderson stated that if an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes,

> [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

328 U.S. at 687, superseded by statute on other grounds as stated in Sandifer v. U.S. Steel Corp., __ U.S. __, 134 S. Ct. 870, 875-76 (2014). Instead, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id.

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Id. at 687-88.

The Second Amended Complaint states that Plaintiffs worked in excess of forty hours per week and "were paid for some of the overtime hours they worked, but were not paid for all of the overtime hours they worked."  (Sec. Am. Compl. ¶¶ 21, 28.)  They argue that Defendants owe them for the hours Grullon deleted from their timesheets, and for time commuting between the employee parking lot and Alamo MIA.

### 1.    Deleted hours

The time records submitted as Exhibit 19 to Plaintiffs' Motion reflect that "Alex Grullon" did, in fact, delete hours from Plaintiffs' time sheets.[4]  (See Exhibit 19, D.E. 84-18.)  For example, for the week ending October 31, 2013, Grullon deleted 2.50 hours from Plaintiff Quintanilla's time sheet; thus, instead of getting paid 6.74 hours of overtime that period, Quintanilla was only paid 4.24 hours of overtime.[5]  (Id. at 25.)  For the week ending October 3, 2013, Grullon deleted 2.5 hours from Plaintiff Vazquez's

---

[4]    When hours are adjusted on an employee's timesheet, an automated notation is made in the "comments" section of the "peoplenet" software indicating what the adjustment was, who made it, and when.  (See, e.g., D.E. 84-18 at 2.)  For example, Plaintiff Quintanilla's timesheet for the June 13, 2013 pay period reflects a payroll adjustment deleting 1.42 hours worked from Friday, June 7, 2013.  (See id.)  The adjustment bears the initials "A_G."  (See id.)  The "comments" section for that timesheet states: "Alex Grullon – 06/20/2013 08:48, 'Worked' adjustment added for (-1.42 Hours on Friday)."  Regardless, it is undisputed that Grullon did, in fact, delete hours from Plaintiffs' timesheets.  (See Labor Ready Resp., D.E. 98 ¶¶ 21-25.)

[5]    Grullon also regularly deleted hours from Plaintiffs' time sheets on weeks that Plaintiffs did not work 40 hours.  On one occasion, Grullon deleted 2.24 hours from Plaintiff Ricardo's timesheet for October 4, 2013—a date on which Ricardo only recorded working 0.53 hours.  (D.E. 84-18 at 137.)  Consequently, after Grullon's deletion, Ricardo was credited for working -1.71 hours that day, that is, negative 1.71 hours.  (See id.)  These deletions are the basis for part of Plaintiffs' claims for minimum wage violations discussed in Section III(b)(1), infra.

time sheet; so instead of getting paid for 40 hours of regular time and 1.54 hours of overtime, Vazquez was only paid 39.04 hours of regular time and no overtime.  (Id. at 42; see also id. at 58, 74, 95-100, 104, 107, 118-24, 132, 134-36.)  Plaintiffs' affidavits aver that Defendants intentionally deducted hours worked from their timesheets.  (See D.E. 84-5 ¶ 8; 84-9 ¶ 8.)  Plaintiff Del Rosario's affidavit states that he "personally observed Mr. Grullon tampering with the payroll and time records so that employees were not paid for all of the hours worked."  (D.E. 85-4 ¶ 8.)

Labor Ready argues that the deleted hours were fraudulently entered,[6] (Labor Ready's Facts, D.E. 98 ¶ 21.)  Labor Ready further argues that Grullon paid Plaintiffs for hours they did not work, apparently suggesting that the deletions were therefore justified and/or inconsequential.  (Id.)  It relies on the Declaration of Michael Livolsi, who "personally spoke to Alexander Grullon" on January 5, 2015.  (See Livolsi Decl., D.E. 98-2 ¶ 2.)

> 3.  During that discussion, Alexander Grullon informed me that . . . he augmented the Plaintiffs' hours by adding hours to their time sheets and paycheck records which they had not worked, and paying them for this time.
>
> 4.  Mr. Grullon informed me that the Plaintiffs were aware of this, they it [sic] was done at their behest and request, under threat that they would quit.

(Id. ¶¶ 3-4.)  Plaintiffs ague that this is inadmissible hearsay, (Reply, D.E. 106 ¶ 3); Labor Ready states that "Mr. Grullon's statements are admissible pursuant to [Federal

---

[6]  It appears to be undisputed that the time records to which Plaintiffs refer relate solely to Labor Ready.  (MDT Resp. ¶ 22.)

Rule of Evidence] 804(b)(3)(A)," (Labor Ready's Resp., D.E. 98 at 9 n.2), but they do not offer any argument or citation in support.

In general, an out of court statement offered to prove the truth of the matter asserted is inadmissible as evidence.  See Fed. R. Evid. 801(c); 802.  One exception to this general rule is a statement made by an unavailable declarant that:

> a reasonable person in the declarant's position would have made only if the
> person believed it to be true because, when made, it was so contrary to the
> declarant's proprietary or pecuniary interest or had so great a tendency to
> invalidate the declarant's claim against someone else or to expose the
> declarant to civil or criminal liability[.]

Id. 804(b)(3)(A).  The Court finds that Grullon's statements to Mr. Livolsi do not fit the Rule 804(b)(3)(A) exception for statements against interest.  Simply put, the at-issue statements were not against Grullon's interests, "when made" or otherwise, much less so contrary to his interests that he would not have said it unless he believed it to be true. That Grullon added hours to Plaintiffs' time sheets—an assertion which, unlike the deletions, is not reflected on the timesheets—does not affect Grullon's pecuniary or proprietary interests.  Grullon was fired from Labor Ready in March or April 2014 when Ami Pavon took over.  (Labor Ready's Resp., D.E. 98 ¶ 14, 16.)  Id.  Thus, when Grullon made the at-issue statements, he had not worked for Labor Ready for approximately eight months.  If the at-issue statements were ever against Grullon's interests, it was not when they were made in January 2015.  Therefore, Grullon's statements to Mr. Livolsi constitute inadmissible hearsay; accordingly, they cannot be considered on Plaintiffs' Motion for Summary Judgment.  See Fed. R. Civ. P. 56(c)(4) (stating that "[a]n affidavit or declaration used to support or oppose a motion must . . . set out facts that would be

11

admissible in evidence"); <u>see also</u> <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment.") (citation and internal quotation marks omitted).

Finally, Labor Ready argues that the Motion must be denied because at the time Plaintiffs' Motion and Labor Ready's Response were filed, the Parties had tried, without success, to depose Mr. Grullon.  (Response, D.E. 98 at 9.)  It argues that pursuant to Rule 56(d), the motion must be denied until Grullon can be examined under oath. (<u>Id.</u>)  That rule provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
> **(3)** issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Labor Ready has not cited to an affidavit or declaration specifying the reasons it could not present facts essential to justify its opposition, i.e., why it could not secure Mr. Grullon's testimony prior to the extended December 15, 2014 fact discovery deadline.  (<u>See</u> D.E. 45.)  Indeed, Plaintiffs assert, and Defendants do not dispute, that "Defendants made no attempts to procure the deposition of Mr. Grullon." (Pl. Mot. at 4.)  Regardless, the Court finds that denying Plaintiffs' Motion pursuant to Rule 56(d) is improper without the declaration or affidavit that the Rule requires.

In sum, Plaintiffs have submitted records that clearly show that Mr. Grullon deleted hours from Plaintiffs' timesheets on weeks that they worked more than 40 hours (or would have worked more than 40 hours but for the deletion).  (<u>See</u> D.E. 84-18.)

Labor Ready admits as much.  (See Labor Ready Resp., D.E. 98 at 8-9.)  Defendants have therefore failed to keep proper and accurate records.  See Allen, 495 F.3d at 1315-16.  Plaintiffs have further submitted affidavits establishing that the hours Grullon deleted were hours they actually worked.  (See, e.g., Del Rosario Aff., D.E. 85-4 ¶ 8.)  In such a situation, "'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  Id. (quoting Anderson, 328 U.S. at 687.)  Here, Plaintiffs have carried their burden by submitting the records showing precisely how many hours Grullon manually deleted from Plaintiffs' timesheets.  (See D.E. 84-18.)  The burden then shifts back to Defendants to "bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence."  Allen, 495 F.3d at 1315-16 (citing Anderson, 328 U.S. at 687-88).  Because Defendants have failed to satisfy this burden, Plaintiffs are entitled to summary judgment on their claims for unpaid overtime wages with respect to the hours Grullon deleted from their timesheets.  See id.

### 2.    Commuting from remote parking facility to Alamo MIA

Next, it is undisputed that Plaintiffs were not paid for the time they spent commuting from the employee parking lot to Alamo MIA when they arrived to work, or from Alamo MIA to the employee lot at the end of their shift.  (See Pl. Facts, D.E. 84 ¶ 24; MDT Resp., D.E. 97 ¶ 24; Labor Ready Resp., D.E. 98 ¶ 24.)  Plaintiffs argue that this commute is compensable time under the FLSA.  (Pl. Mot. at 6-7.)  Defendants argue,

however, that Plaintiffs were not required to park at the remote parking facility and, regardless, their time riding the shuttle back and forth is not compensable as a matter of law under the Portal-to-Portal Act.  (See MDT Resp., D.E. 97 ¶ 24; Labor Ready Resp., D.E. 98 ¶ 24.)  Plaintiffs do not allege that they performed any labor while waiting for or riding the vehicles, either at the beginning or the end of each workday.

"The Portal-to-Portal Act, 29 U.S.C. § 251 et seq., which amends the FLSA, identifies those employee activities which are not compensable under the FLSA." Burton v. Hillsborough Cnty., Fla., 181 F. App'x 829, 833 (11th Cir. 2006).  Specifically, employers are not subject to liability under the FLSA for failure to pay employees overtime compensation for:

> **(1)** walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> **(2)** activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.
>  . . .

29 U.S.C. § 254(a).  The Department of Labor ("DOL") has interpreted Section 254(a) as follows:

> Examples of walking, riding, or traveling which may be performed outside the workday and would normally be considered "preliminary" or "postliminary" activities are (1) walking or riding by an employee between the plant gate and the employee's lathe, workbench or other actual place of performance of his principal activity or activities; (2) riding on buses between a town and an outlying mine or factory where the employee is

14

employed; and (3) riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted.

29 C.F.R. § 790.7(f).

In <u>Bonilla v. Baker Concrete Construction, Inc.</u>, 487 F.3d 1340, 1343-45 (11th Cir. 2007), the Eleventh Circuit was called upon to determine (coincidentally) whether travel time between the employee parking lot and Miami International Airport qualified as a non-compensable activity under Section 254(a).  In that case, the appellants were construction workers employed by the appellee subcontractor, Turner-Austin, on a project at MIA.  <u>Id.</u> at 1341.

> In order to reach their work sites inside the airport, appellants were required to pass through a single security checkpoint to the tarmac and then ride authorized buses or vans to their particular work site.  Because FAA regulations prohibit unauthorized vehicles in the secured tarmac area, Turner-Austin provided free buses or vans to transport appellants and other workers from the free employee parking lot to the security gate and on through to each of the separate work sites.  Appellants were not required to park at the employee lot, but they were required to enter the facility through the single authorized security entrance and then ride the contractors' authorized vehicles to the various work sites.  The security gate was near other public parking lots and a public bus stop; appellants were free to meet the authorized vehicle at the security gate rather than at the employee parking lot several miles away.  Riding Turner-Austin's authorized vehicles was the only way for the workers to access the construction sites after passing through the security gate.

> The employees did not perform any labor while waiting for or riding the vehicles, either at the beginning or end of each work day.  No instructions were given by the supervisors nor were any tools carried on the buses because the tools were kept at the work sites.  Appellants signed in at the work site and then received their instructions for the day.  At the end of the day, appellants would sign out before boarding the bus to leave the airport through the security gate. . . .

> Appellants were not paid by appellee for the time spent riding the buses or vans.

15

Id.  The district court granted summary judgment for the employer, id. at 1342, and the Eleventh Circuit affirmed, concluding that the appellants' claim fit "squarely within" the statutory exception found in 29 U.S.C. § 254(a), as interpreted by the DOL.  Id.  "The fact that the workers were required to ride authorized transportation after the security gate but the transportation to the security gate was optional is not relevant to the outcome of this case because even mandatory travel time is exempted from compensation under the Portal-to-Portal Act."  Id. (emphasis added).  Thus, the Eleventh Circuit held that "the time appellants spent traveling on the vehicles both before and after the security check point is exempt from compensation under the FLSA."  Id.

In all relevant respects, Bonilla is materially indistinguishable from the case at bar. The commute between the employee parking lot and Alamo MIA fits "squarely within" the preliminary and postliminary activities exception found in 29 U.S.C. § 254(a), as interpreted by the DOL, 29 C.F.R. § 790.7(f).  See id.  Accordingly, the Court finds that pursuant to Bonilla, Plaintiffs are not entitled to compensation for the time spent travelling between the remote parking facility and Alamo MIA.  Therefore, Defendants are entitled to summary judgment on Plaintiffs' claims of unpaid overtime wages regarding the commute between the employee parking facility and Alamo MIA.

### b.    Counts V and VI: unpaid minimum wage

Counts V and VI of the Second Amended Complaint allege claims for unpaid minimum wages under the FLSA and Florida's Minimum Wage Act against Labor Ready and MDT, respectively.  (D.E. 33 ¶¶ 47-55, 56-64.)  Plaintiffs argue that Defendants

failed to pay them minimum wage for (1) the hours Grullon deleted from their timesheets, and (2) the time spent travelling between the employee parking facility and Alamo MIA. (Motion at 6-7.) Additionally, Plaintiffs Quintanilla, Rodriguez, Ricardo, Aguilera, and Vazquez argue that because they were paid precisely minimum wage, their hourly rate necessarily fell below minimum wage on each workweek Grullon deleted hours. (Id. at 7-8.) With respect to the deleted hours, Labor Ready argues that Plaintiffs were paid for hours they did not actually work, thereby offsetting any deficiency.[7] (D.E. 98 at 8-9.) With respect to the commute time, both Defendants argue that Plaintiffs are not entitled to compensation. (D.E. 97 at 11-14; D.E. 98 10-14.)

"Employers must provide workers' weekly wages 'in cash or in facilities', 'free and clear' of improper deductions, at a rate no lower than the minimum wage rate[.]" Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228, 1235 (11th Cir. 2002) (citing 29 U.S.C. § 206(a)(1)); see also Fla. Stat. § 448.110. "The effective hourly rate for determining minimum wage violations is calculated by dividing the amount of compensation paid during a workweek by the total number of hours the employee worked during that workweek. In other words, it is the workweek as a whole rather than each individual hour within a workweek that is the relevant unit for determining compliance with the minimum wage requirement." Walters v. Am. Coach Lines of Miami, Inc., 569 F. Supp. 2d 1270, 1300 (S.D. Fla. 2008), aff'd 575 F.3d 1221 (citing Posely v. Eckerd Corp., 433 F. Supp. 2d 1287, 1308 (S.D. Fla. 2006) (granting summary judgment for

---

[7] As previously mentioned in Note 6, supra, it appears to be undisputed that the time records to which Plaintiffs refer relate solely to Labor Ready. (MDT Resp., D.E. 97 ¶¶ 21-23.)

17

employer on minimum wage claim where plaintiffs conceded "that when dividing their total weekly compensation by the total number of hours they worked in any given week, they never received less than $5.15 per hour"); United States v. Rosenwasser, 323 U.S. 360, 363-64 (1945) (approving the averaging of earnings over a standard workweek to determine whether minimum wage law has been violated); Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 n.16 (1942) (holding that to determine whether minimum wage law has been violated, one must divide total weekly pay received by total number of hours worked); Dove v. Coupe, 759 F.2d 167, 168 (D.C. Cir. 1985); Roland Elec. Co. v. Black, 363 F.2d 417, 420-21 (4th Cir. 1947); Hutson v. Rent-A-Center, Inc., 209 F Supp. 2d 1353, 1359-60 (M.D. Ga. 2001); Marshall v. Sam Dell's Dodge Corp., 451 F. Supp. 294, 302 (N.D.N.Y. 1978)).

"An employee who brings a lawsuit under the FLSA for unpaid minimum wages . . . and liquidated damages bears the initial burden of proving that she performed the work for which she was not properly compensated."  Perez v. Palermo Seafood, Inc., 548 F. Supp. 2d 1340, 1346 (S.D. Fla. 2008) (citations omitted).

> In [Anderson], the Supreme Court recognized that "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records," but "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." 328 U.S. at 687, 66 S. Ct. 1187.  In "such a situation . . . an employee has carried out his burden if he proves that he has in fact performed the work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id.  The "burden then shifts to the employer to come forward with the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." Id. at 687-88, 66 S. Ct. 1187.  Where the "employer fails to

> produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. at 688, 66 S. Ct. 1187.

Id. at 1346-47.

### 1.    Deleted hours

As discussed in Section III(a)(1)(A), supra: (1) Defendants failed to keep proper and accurate records insofar as Grullon deleted hours from Plaintiffs' timesheets; (2) Plaintiffs have produced records showing precisely how many hours Grullon manually deleted from their timesheets, (see D.E. 84-18); and (3) Defendants have failed to produce evidence negating the reasonable inference to be drawn from Plaintiffs' evidence.  Accordingly, Plaintiffs are entitled to summary judgment on their claims for unpaid minimum wages for the pay periods in which Grullon deleted hours from their timesheets, insofar as their total weekly compensation divided by the number of hours they actually worked fell below the applicable minimum wage rate.[8]  See Walters, 569 F. Supp. 2d at 1300.

### 2.    Commuting from remote parking facility to Alamo MIA

As previously discussed in Section III(a)(1)(B), supra, the time Plaintiffs spent commuting between the employee parking facility and Alamo MIA is not compensable

---

[8]    For the Plaintiffs who were paid precisely minimum wage, this will be every week Grullon deleted hours.  To illustrate, Defendants paid Plaintiff Quintanilla precisely minimum wage.  (See Quintanilla Aff. ¶ 4.)  During the June 20, 2013 pay period, Grullon deleted 1.35 hours from Quintanilla's timesheet.  (See D.E. 84-18 at 3.)  Thus, instead of getting paid for the 17.35 hours he actually worked, Plaintiff Quintanilla was paid for 16 hours of work.  (See id.)  During that pay period, the applicable minimum wage rate was $7.79.  (See Quintanilla 6/20/13 Paystub, D.E. 84-11 at 4.)  Dividing what Quintanilla was actually paid ($124.64) by the number of hours he actually worked (17.35) is less than the applicable minimum wage ($7.18 < $7.79).  Accordingly, Quintanilla is entitled to summary judgment on his minimum wage claim for the June 20, 2013 pay period, and every pay period from which Grullon deleted hours.

under the FLSA, as amended by the Portal-to-Portal Act.  See Bonilla, 487 F.3d at 1343.

Accordingly, Defendants are entitled to summary judgment as to Plaintiffs minimum

wage claims regarding the commute between the employee parking facility and Alamo

MIA.[9]

---

[9]   Counts V and VI also allege that Defendants "failed to pay each of the Plaintiffs for two weeks in which they performed worked[.]" (Compl., ¶¶ 52-53, 61-62.)  Plaintiffs wholly fail to mention these allegations in their Motion for Summary Judgment, and the Court considers them abandoned.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citations omitted).

Even if the Court were to consider those claims, Defendants are entitled to summary judgment with respect thereto.  MDT states in its Motion that "[d]uring the employment of each of the Plaintiffs, MDT had no corporate policy to hold two weeks of pay from its employees." (MDT Mot., ¶ 10 (citing to Guarino Aff., D.E. 78-1 ¶ 9).)  MDT cites to the Affidavit of Joey Guarino, which states, in relevant part: "I am over the age of 18 years and I make this affidavit upon personal knowledge and a review of documents that were created and that are maintained in MDT's regular course of business." (Guarino Aff. ¶ 1.)  "I am employed by MDT Tek, LLC d/b/a iLabor Network. I work as VP of HR and General Counsel. During all times relevant to this action, I was formerly employed by MDT Personnel, LLC." (Id. ¶ 2.)  "I have personal familiarity with all of MDT's customs, practices and protocols with respect to the foregoing and I have personal knowledge of the facts set forth herein." (Id. ¶ 3.)  "During the employment of each of the Plaintiffs, MDT had no corporate policy to hold two weeks of pay from its employees." (Id. ¶ 9.)  The Court finds that Guarino's affidavit is sufficient to sustain MDT's evidentiary burden to support its Motion.  See Fed. R. Civ. P. 56(c)(4).

Plaintiffs' Response to MDT's Motion states simply: "Defendant did hold wages in abeyance. The Affidavit of each Plaintiff shows that Defendant had a policy to withhold wages in abeyance." (Pls. Resp., D.E. 95 ¶ 10.)  Their attached Affidavits state, in their entirety: "My name is [name].  I have personal knowledge of the facts set forth herein.  I am over 18 years of age.  While employed by both Defendants, it was the practice to hold one or more weeks of wages in abeyance from work at the beginning of my employment." (D.E. 95-3 at 1-14.)  These affidavits are insufficient as a matter of law.  Rule 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "Additionally, the affidavit or declaration must state the basis for such personal knowledge." Duke v. Nationstar Mortg., L.L.C., 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012) (citing Bruce Constr. Corp. v. United States, 242 F.2d 873, 877 (5th Cir. 1957)).  Plaintiffs' affidavits do not state the basis for such personal knowledge.  Accordingly, they are insufficient to support their Response.

The Court concludes that Plaintiffs have wholly failed to make a showing sufficient to establish the existence of an element essential to their case, and on which they will bear the burden of proof at trial—i.e., that Defendants withheld two weeks of their wages.  "In such a

### c.    Counts III and IV: late minimum wage payments

Counts III and IV allege minimum wage violations for failure to have a "regular pay period and make reasonably prompt payments in issuing pay for the work performed in the pay period." (See Compl. ¶ 42.)  For these failures, Plaintiffs seek liquidated damages.  (See id.)

Any employer who violates the minimum wage provisions of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). In two unpublished opinions, the Eleventh Circuit has apparently taken the position that wages become "unpaid" when they are paid "unreasonably late during the relevant period." Arroyave v. Rossi, 296 F. App'x 835, 836 (11th Cir. 2008); see also Benavides v. Miami Atlanta Airfreight, Inc., 322 F. App'x 746, 747 (11th Cir. 2009).  In Arroyave, the Eleventh Circuit found that a regular ten-day delay in payment was not unreasonable. 296 F. App'x at 837.  In Benavides, it found that a seven or eight day delay between the end of the pay period and the employer's regular payment date is not "actionably unreasonable or untimely." 322 F. App'x at 747.  See also Morales-Arcadio v. Shannon Produce Farms, Inc., No. 605CV062, 2007 WL 2106188, at *20 (S.D. Ga. July 18, 2007) ("[D]elayed payment only becomes 'unpaid' (thus giving rise to FLSA liquidated damages under 29 U.S.C. § 216(b)) where payment is not reasonably prompt under the

---

situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 322-23. Accordingly, even if the Court did not deem the issue to be abandoned, Defendants would be entitled to summary judgment on the claim that Defendants failed to pay Plaintiffs for two weeks of work.

totality of the circumstances in the particular case.") (citation and quotation marks omitted); Ramos v. Guiribitey Cosmetic & Beauty Inst., Inc., No. 12-cv-24106-JLK, 2013 WL 6145115, at *2 (S.D. Fla. Nov. 21, 2013) ("It is permissible for an employer to tender payment a reasonable time after the pay period.") (citing Arroyave, 296 F. App'x at 837).

Therefore, the rule in the Eleventh Circuit appears to be that an employer must pay its employees within a reasonable time after the end of the pay period.  Minimum wages become unpaid, and an employer is liable under the FLSA for liquidated damages, when they are "unreasonably late during the relevant period."  Arroyave, 296 F. App'x at 836.

## 1.    MDT

MDT argues that it paid its employees within six days of the end of the pay period. (MDT Mot., D.E. 78 at 7-8.)  It cites to the Affidavit of Joey Guarino, MDT's Vice President of Human Resources and General Counsel, who states that "[a]ccording to each of the Plaintiffs' Employee Wage Statements, Plaintiffs were always paid within six days of the end of the pay period."  (D.E. 78-1 ¶ 6 (citing to Employee Wage Statements, D.E. 78-1 at 5-27).)

Plaintiffs do not dispute that they were, in fact, paid within six days of the end of each pay period, but rather argue that the records provided by Guarino do not reflect such.  (See D.E. 95 ¶ 7.)  Although Plaintiffs argue that their payments were "late" or "untimely," (D.E. 95 at 10-11), the rule in the Eleventh Circuit is that payment must be unreasonably late.  See Arroyave, 296 F. App'x at 836.  Plaintiffs do not argue that the payments were "unreasonably" late or untimely.  (See id.)  Nor do they cite to evidence

in the record from which the Court could conclude that the payments were "unreasonably late during the relevant period." Arroyave, 296 F. App'x at 836. The Court has reviewed the time records and paystubs provided by Plaintiffs and has found nothing that would arguably take this case beyond the realm of Arroyave and Benavides and into the realm of unreasonableness.

The paystubs Plaintiffs attach to their Response to MDT's Motion reflect that paychecks were always issued within a few days of the end of the pay period. For example, for the pay period ending September 29, 2012, Plaintiff Aguilera was issued a check three days later on October 2, 2012. (D.E. 95-1 at 3.) For the pay period ending April 26, 2012, Plaintiff Del Rosario was issued a check the next day, April 27, 2012. Id. at 82.) In fact, based upon the paystubs submitted by Plaintiffs in support of their own Motion, MDT never paid them more than four days from the end of the pay period. (See D.E. 84-30, -31, -33.)

Construing the evidence and factual inferences arising therefrom in the light most favorable to Plaintiffs, Adickes, 398 U.S. at 157, the Court finds that there is no genuine issue of material fact regarding MDT's failure to timely pay Plaintiffs wages. Plaintiffs do not dispute that they were paid within six days of the end of each pay period, and they do not argue that such a delay is "unreasonable." Regardless, the Court's review of the record evidence reveals that MDT paid Plaintiffs within four days of the end of each pay period, and there is no evidence (or argument) to suggest that this was "unreasonably late during the relevant period." Arroyave, 296 F. App'x at 836. Accordingly, MDT is entitled to summary judgment on Count III.

### 2.   Labor Ready

As previously discussed, employers are liable for liquidated damages under the FLSA for "unpaid" wages.  29 U.S.C. § 216(b).  Wages become "unpaid" when they are paid "unreasonably late during the relevant period."  Arroyave, 296 F. App'x at 836; see also Benavides, 322 F. App'x at 747.

Labor Ready argues that it has an established pay period of Saturday to Friday, and that it always paid its employees within eight days of the end of the pay period. (Labor Ready Mot., D.E. 80 at 7 (citing Pavon Decl., D.E. 80-1 ¶¶ 3-4.)   Although Plaintiffs argue that Labor Ready failed to make "prompt" payment of their wages, they do not argue that payment was "unreasonably" late.  (Pl. Resp. at 14.)  Rather, they argue that (1) Labor Ready's argument that it paid wages within eight days is based on a misinterpretation of the law, and (2) Labor Ready failed to satisfy its evidentiary burden. (Id. at 14-19.)

First, Plaintiffs appear to argue that Labor Ready misinterprets Arroyave as standing for the proposition that it may pay its employees up to ten days late, i.e., up to ten days after payday.  (Id. at 16.)   The Court interprets Arroyave to stand for the proposition that employers may pay their employees within a reasonable time after the end of the pay period.  See Section III(c)(1), supra.  The Court interprets Labor Ready's argument as correctly relying on Arroyave for this proposition.  (See Labor Ready Mot., D.E. 80 at 7 (arguing that "Labor Ready paid Plaintiffs within 8 days of the end of the pay period").

Second, with respect to Labor Ready's alleged failure to satisfy its evidentiary burden, Labor Ready has produced evidence that it always paid Plaintiffs within eight days of the end of the pay period.  (See Pavon Decl., D.E. 80-1 ¶ 3.)  Specifically, Alamo MIA branch manager Ami Pavon provided a Declaration stating:

> Based upon my knowledge of Labor Ready policies, since the time of the acquisition of MDT assets by Labor Ready, it was the policy and practice of Labor Ready to pay workers on a Saturday to Friday work week within seven to eight days following the Friday of the preceding pay period.  A review of the records reveals this to be the case.

(Id. ¶ 3 (emphasis added).)  She goes on to describe pay records Labor Ready attached as Exhibits to its Motion.  (See D.E. 80-2 through -18.)  Plaintiffs argue that Pavon's Declaration should be stricken from the record as a sham pursuant to Federal Rule of Civil Procedure 56(h) because it contradicts her earlier deposition testimony that she had no "personal knowledge" of Labor Ready's operations prior to her taking over for Grullon in April 2014.[10]  (Pl. Resp., D.E. 96 at 17-18.)

The Court finds that Pavon's deposition testimony is not inconsistent with her Declaration.  Pavon testified at her deposition (1) in her personal capacity as the Alamo MIA branch manager and the individual in charge of paying Plaintiffs' wages beginning

---

[10]    Under the "sham affidavit rule," "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984).  "This rule is applied 'sparingly because of the harsh effect [it] may have on a party's case.'" Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting Rollins v. TechSouth, 833 F.2d 1525, 1530 (11th Cir. 1987)).  Accordingly, a party bears "a heavy burden in order to exclude an affidavit under the sham affidavit rule." In re Stand 'N Seal, Prods. Liab. Litig., 636 F. Supp. 2d 1333, 1335 (N.D. Ga. 2009).

in April 2014 <u>and</u> (2) as Labor Ready's corporate representative.  <u>See</u> Fed. R. Civ. P. 30(b)(6).  Rule 30(b)(6) requires a corporation to designate a person or persons to testify on its behalf.  <u>See id.</u>  "The persons designated must testify about information known or reasonably available to the organization."  <u>Id.</u>  Thus, when Pavon testified from "personal knowledge," all parties understood that term to mean things Pavon knew from personal, first-hand experience after arriving at Labor Ready.

> Q.    So your <u>knowledge</u> only goes from March – excuse me – February 2014[11] through now?
>
> A.    Yes.
>
> Mr. Bleakley [Labor Ready's Counsel]:  <u>Personal knowledge</u>.
>
> Mr. Marban [Plaintiffs' Counsel]:  I understand.

(D.E. 125-3 at 14-15 (emphases added).)  Consequently, Pavon's deposition statement that she had no "personal knowledge" of Labor Ready's pay practices prior to her arrival merely reflects that she had no first-hand experience of those pay practices.[12]

---

[11]    Pavon testified that she "began going to Alamo" MIA in February 2014, and became permanent in April.  (Pavon. Depo at 12, 14.)

[12]    However, as Labor Ready's 30(b)(6) representative, Pavon had gained non-"personal" knowledge of Labor Ready's operations prior to her arrival.  (<u>See</u> Pavon Depo., D.E. 125-3 at 48-49.)  Indeed, Pavon's testimony provides examples of employment issues pre-dating her arrival that she had researched for the deposition.  (<u>See, e.g.</u>, <u>id.</u> at 24 (investigating Plaintiff Rodriguez's removal from the Alamo MIA site).)  Labor Ready correctly notes that Plaintiffs' Counsel limited his questions to issues within Pavon's "personal knowledge," as that term was understood during the deposition—i.e., facts and issues post-dating her arrival in February 2014—even though she had researched and reviewed pay records pre-dating her arrival.  (<u>See, e.g.</u>, <u>id.</u> at 25 (regarding the overtime wage requirements: "You have always been aware of that <u>since you worked for defendant</u>?" (emphasis added); <u>id.</u> at 26 ("<u>When you worked at Labor Ready</u> did you take any active steps to ensure that the company was paying overtime in accordance with the [FLSA]?" (emphasis added).)

On the other hand, Pavon's Declaration states that her "personal knowledge" of Labor Ready's operations prior to her arrival is based on a "review of the records." (D.E. 80-1 ¶ 3). This does not render her Declaration a "sham." Under Rule 56, a declaration in support of a motion for summary judgment must be based upon personal knowledge. Fed. R. Civ. P. 56(c)(4). "[P]ersonal knowledge can be based on a review of relevant business files and records." Duke v. Nationstar Mortg., L.L.C., 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012) (citing Mid–Continent Cas. Co. v. Don Brady Constr. Co., No. 11–088–CG–C, 2012 WL 1598149, at *2 (S.D. Ala. May 7, 2012) (quoting In re Trafford Distrib. Ctr., Inc., 414 B.R. 858, 862 (Bankr. S.D. Fla. 2009) ("[A]s a matter of law, 'personal knowledge can come from the review of the contents of business files and records.'")). Accordingly, the Court finds that Pavon's Declaration should not be excluded.

As such, Labor Ready has sustained its burden of producing evidence that it paid Plaintiffs' wages within eight days of the end of each pay period. (See Pavon Decl., ¶ 3.) The record is replete with Plaintiffs' time records, and Labor Ready has provided copies of Plaintiffs' paychecks. (See D.E. 103-1.) Plaintiffs have failed to identify any checks that were issued more than eight days after the end of a pay period. Indeed, Plaintiffs do not dispute that they were, in fact, paid within eight days of the end of the pay period. (See Pl. Resp., D.E. 96 at 14-19.) Nor do they argue that an eight day delay in payment is "unreasonably late during the relevant period." Arroyave, 296 F. App'x at 836.

The Court finds that there is no genuine issue of material fact as to whether Labor Ready timely paid Plaintiffs their wages. The wages were paid within eight days of the

end of each pay period, and such a delay is not argued to be or shown to be "unreasonably late."  See <u>Arroyave</u>, 296 F. App'x at 836; <u>see also</u> <u>Benavides</u>, 322 F. App'x at 747.  As a result, Labor Ready is entitled to Summary Judgment on Count IV.

## IV.    Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Plaintiffs' Motion for Summary Judgment (D.E. 84), filed January 9, 2015, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order; specifically, Plaintiffs are entitled to summary judgment for:

    **a)**    Counts I and II insofar as they allege overtime wage violations for the hours Grullon deleted from their timesheets;

    **b)**    Counts V and VI insofar as they allege minimum wage violations for the hours Grullon deleted from their timesheets;

2.    Defendant MDT Personnel, LLC's Motion for Summary Judgment (D.E. 78), filed January 5, 2015, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order; specifically, MDT is entitled to summary judgment for:

    **a)**    Count II insofar as it alleges overtime wage violations for failure to compensate time spent commuting between the employee parking facility and Alamo MIA;

    **b)**    Count VI insofar as it alleges minimum wage violations for failure to compensate time spent commuting between the employee parking facility and Alamo MIA; and

   c)      Count IV for failure to promptly pay minimum wages;

**3.**      Defendant Labor Ready Southeast, Inc.'s Motion for Summary Judgment (D.E. 80), filed January 5, 2015, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order; specifically, Labor Ready is entitled to summary judgment for:

   **a)**      Count I insofar as it alleges overtime wage violations for failure to compensate time spent commuting between the employee parking facility and Alamo MIA;

   **b)**      Count V insofar as it alleges minimum wage violations for failure to compensate time spent commuting between the employee parking facility and Alamo MIA; and

   **c)**      Count III for failure to promptly pay minimum wages; and

**4.**      Trial on damages will be set by separate order.

   **DONE AND ORDERED** in Chambers at Miami, Florida this 25th day of August, 2015.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**